Learned, P. J.
The plaintiffwas an employee of defendant, and was injured while coupling cars at Schenectady. A train of freight cars had come in from Rutland. How long before does not appear. One of these, an ordinary box car, was standing on a side track. An engine, with three or four cars, was moving back to be coupled to this standing car. Plaintiff was' ordered to make the coupling. He walked down on the right side of the cars that were moving, at the rear end of the rear car, with his face towards the standing car, the cars moving about as fast as he could walk. He walked about the length of a car, and before the cars reached the standing car he stepped in to couple. There was nothing to prevent his seeing the draw-head if he had looked. He did not look until after he had gone in between the cars. On the standing car the bolts on one side, which hold up the hanger, had broken, and the hanger had dropped down on that side. The hanger is the plate *369 "which holds up the draw-head. Here the draw-head also had dropped, so that when the cars came together the draw-head on the standing car passed under that on the moving car, and the dead-woods struck together. The link was in the draw-head of the standing car. The plaintiff with his right hand caught hold of the link and attempted to raise it, but was unable to do so, and then jerked his hand out. But it was caught between the dead-woods and crushed.
(Dead-woods are otherwise called bumpers, or buffers. They are pieces of wood fastened on the end of the sill of the car. And the draw-heads, having a spring connected with them, are between the dead-woods).
When the draw-heads are in place, if any, they project about one and one-half inches beyond the dead-woods; when old, about three-fourths of an inch. The distance between the deadwoods is eleven inches. The dead-woods are eight inches across and ten inches up and down, and project ten inches from the sill of the car. The top of the draw-head is, according to one witness, about two inches below the bottom of the dead-woods; according to another, very near the lower surface of the dead-woods.
According to one witness, if the draw-heads are in place they do not yield enough when one car is standing and another backing slowly to permit the dead-woods to strike together. According to another witness, the dead-woods invariably strike when a coupling is made.
But, whichever of these witnesses is right, it is evident that, inasmuch as the distance between the dead-woods of meeting cars is only three inches, at the most, when the draw-heads touch, it is and must be perilous to put an arm between these dead-woods. If they are sure to approach as near as three inches, and may come together, a man should not put his arm between them.
As to the proper mode of coupling, the plaintiff says that the proper mode is to place one hand under the dead-wood and raise the link and the other over the dead-wood, and drop the link; and he says that either over or under the dead wood is proper. It does not seem that the dropping of the pin exposes to any risk. But it is evident that in attempting to raise the link there might be risk if the attempt was improperly made.
From the outside of the dead-woods to the center of the draw-head, is II inches. And the top of the dead-woods, as a witness testifies, was 3 1-2 feet from the ground — about up to his breast. If, then, a man standing outside of the dead-woods reaches over and down to the link, which is nine or ten inches long, and must project some inches beyond *370 the draw-heads, it is evident that he must have his arm between the dead-woods and cannot keep clear from them. And so it was testified by a witness. And as they are almost certain to come within three inches of each other, and probably much nearer, this act of his would be evidently careless. It is plain that the safe way is to take the link, from below, keeping the arm under the range of the dead-woods. In the present case the plaintiff evidently took the link from above. He endeavored to raise it, but could not;, and did not succeed in withdrawing his arm quickly enough.
The defendant asked for a non-suit on the grounds,, among others, that there was no proof of negligence on defendant’s part. The learned justice in his charge said that the mere fact that there was a defect was not enough unless-it had existed so long that the company was chargeable with notice, or had actual notice.
Now the evidence is simply that this defect was in a car which had been brought in from the north and placed on a side track. We have examined the case and we find no evidence showing how long the defect had existed; nor even how long the car had been in the yard.
The duty of the master to furnish suitable machinery and to keep it in repair, is not absolute, and is satisfied by the exercise of reasonable care and prudence. Probst v. Delamater, 100 N. Y., 272.
There is nothing to the contrary of this in Jones v. N. Y. C. and H. R. R. R. Co. 28 Hun, 364, and 92 N. Y., 628. For in that case it was said that the appearance of the broken ring.(which was shown to the jury) might have given them satisfactory proof that the defect had been of long standing. It was not claimed in that case that the defendants would have been hable without some evidence of negligence other than the mere breaking of the ring. See also, DeGraff v. N. Y. C. and H. R. R. R. Co., 76 N. Y., 131;. Devlin v. Smith, 89 id., 470.
It is claimed by defendant that the learned justice erred, in charging that as a general rule an employer is bound to-find perfect machinery. But we think that this language was afterwards sufficiently qualified so that the jury were-not misled.
It seems to us also that there was contributory negligence on the part of the plaintiff. He says just as soon as-he took hold of the link he saw he could not raise it and tried to jerk his arm out. Now the draw head had dropped only three or four inches. Very evidently then the plaintiff was not obliged to keep his hand there longer than he would have done if he had lifted up and held the link (assuming it to be in its place) until it had entered the other draw head. The dead-woods came together and re *371 bounded and struck together again. Now, the plaintiff’s carelessness was in attempting to reach the link from above, when any compression of the springs of the draw heads would bring the dead-woods nearer than two or three inches, their ordinary distance.
It is evident that an engine and three or four cars can hardly ever be moved so gently back as not to compress the springs of the ¿raw heads. And it was shown that in an ordinary car it was very dangerous to reach over and raise the link; and was impossible to do this without getting between the dead-woods. And as the defect in this car was visible, if the. danger was thereby increased, the plaintiff should have avoided it with more care. Goodrich v. N. Y. C. and H. R. R. R. Co., 22 Weekly Dig., 155; S.C., 3 N. Y. State Rep., 774.
We think the judgment and order should be reversed and a new trial granted, costs to abide the event.
Landon and Mayham, JJ., concur.